**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CITIZENS INSURANCE COMPANY OF AMERICA,** | |
| **Plaintiff,** | **Case No. 22-cv-1334** |
| **v.** | **Judge Jorge L. Alonso** |
| **MULLINS FOOD PRODUCTS, INC., and RICARDO GALAN, individually and on behalf of all others similarly situated,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Citizens Insurance Company of America ("Citizens") brings a five-count complaint for declaratory judgment against Mullins Food Products, Inc. ("Mullins"), and Ricardo Galan ("Galan") seeking a declaration that Citizens, which issued an insurance policy to Mullins, has no duty to defend or indemnify Mullins in the underlying lawsuit filed by Galan, individually and on behalf of all others similarly situated, under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Mullins filed a counterclaim seeking a declaration that Citizens is obligated to defend and indemnify Mullins and breached the insurance policy by failing to do so. The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court denies Citizens' motion except with respect to Mullins' breach of contract counterclaim on the duty to defend, which is dismissed, and denies Mullins' cross-motion.

1

## I.    Background[1]

### A.  The Underlying Lawsuit

On February 24, 2018, Defendant Galan filed a putative class action complaint ("*Galan* Complaint") against Mullins in the Circuit Court of Cook County, Illinois, Case No. 2021 CH 898 ("*Galan* Lawsuit"). (Citizens' SOF ¶ 8, ECF No. 45.) The *Galan* Complaint alleges that Galan was Mullins' employee between August 2016 and July 2019, and that he was required to scan his biometric identifiers, such as fingerprints or handprints, as a method to track his time each time he clocked in and out. (*Id*. ¶ 9, Ex. D thereto at ¶¶ 5, 15-17.) Mullins allegedly disseminated electronic information derived from Plaintiff's biometric identifiers to third parties, including vendors for timekeeping, data storage, and payroll purposes, even though he was not first informed in writing. (*Id*. Ex. D at ¶¶ 5, 19-20.) Mullins also allegedly failed to seek and secure Galan's consent and inform Galan of Mullins' retention policy for the biometric data. (*Id*. Ex. D at ¶¶ 20-21.)

The *Galan* Complaint asserts one cause of action against Mullins for violation of Illinois' BIPA, which, among other things, requires companies to obtain informed written consent from employees before acquiring their biometric data, 740 ILCS 14/15(b), prohibits private entities from disclosing a person's biometric information without first obtaining consent for that disclosure, 740 ILCS 14/15(d)(1), and mandates that companies in possession of biometric data establish and maintain and comply with a biometric data retention and deletion policy, 740 ILCS 14/15(a). (Citizens' SOF Ex. D, ECF No. 45.) Galan alleges that Mullins violated these requirements, and therefore his and the putative class members' right to privacy, as set forth in BIPA. (*Id*. Ex. D at ¶¶ 33-39.) Galan and others similarly situated allege that the deprivation of

---

[1] The facts in the Background section are undisputed unless otherwise noted.

statutory rights conferred by BIPA constitutes actual injuries. (*Id*. Ex. D at ¶ 7.) The class that Galan seeks to certify is defined as: "All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of [Mullins] within the state of Illinois at any time within the applicable limitations period." (*Id*. Ex. D at ¶ 23.)

### B. The Policies

Mullins seeks coverage of the *Galan* Lawsuit under three insurance policies issued to it by Citizens: policy number ZBC A251558 01, effective March 24, 2015 to March 24, 2016 (the "2015 Policy"); policy number ZBC A251558 02, effective March 24, 2016 to March 24, 2017 (the "2016 Policy"); and policy number ZBC A251558 03, effective March 24, 2017 to March 24, 2018 (the "2017 Policy" and together with the 2015 Policy and 2016 Policy, the "Policies"). (Citizens' SOF ¶ 1, ECF No. 45.) The Citizens Policies provide, among other things, a general liability coverage part subject to a $1,000,000 Personal and Advertising Injury limit of liability and a general aggregate limit of $2,000,000. (Mullins SOF ¶ 7, ECF No. 54.) The 2016 and 2017 Policies also contain a Cyber Liability Coverage Part that has a $50,000 maximum aggregate limit of liability.

The Citizens Policies each promise that Citizens will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (Citizens' SOF ¶ 2, ECF No. 45.) Further, Citizens has "the right and duty to defend the insured against any 'suit' seeking those damages." (*Id*.)

The term "personal and advertising injury" is defined in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or

3

written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (*Id.* ¶ 3; *see also, e.g.*, Ex. A thereto at ECF p. 175 of 1125.)[2]

The Citizens Policies set forth the following exclusion:

This insurance does not apply to: . . .

**p. Recording and Distribution Of Material or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Citizens' SOF ¶ 5, ECF No. 45.)

Next, the 2016 and 2017 Policies contain an endorsement that states the following exclusion:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

---

[2] Given the substantial length of the Policies and the lack of internal consecutive pagination, the Court cites herein to the ECF page numbers where necessary.

This exclusion applies even if damages are claimed for notification costs, credit expenses, public relations expenses, or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(*Id*. ¶ 6.)

Finally, under the Employment Practices Liability Exclusion Endorsement, the Policies

do not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; . . .

(*Id*. ¶ 4.)

The Policies also contain the following condition:

**Duties in the Event of Occurrence, Claim or Suit**
\* \* \*
**b.** If a claim is made or a "suit" is brought against any insured you must:
    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
    **(2)** Notify us as soon as practicable.
    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
**c.** You and any other involved insured must:
    **(1)** Immediately send us copies of any demands, notices, summonses or legal documents received in connection with the claim or "suit" . . . .

(*Id*. ¶ 7.)

"Suit" is defined in pertinent part as "a civil proceeding in which damages because of . . .

'personal and advertising injury' to which this insurance applies are alleged." (*See, e.g.*, ECF No.

54-2, ECF p. 176 of 208.)

### C. Notice to Citizens of the *Galan* Lawsuit

Mullins has been in operation since approximately 1957 and has 503 employees. (*Id*. ¶ 12.) In January 2018, Mullins was acquired by and became a subsidiary of Newly Weds Foods, Inc. ("Newly Weds"). (*Id*. ¶ 13.) Newly Weds is a food ingredient manufacturer that was founded in 1932 and has approximately 25 to 30 plants worldwide. (*Id*. ¶ 14.) Newly Weds has its own in-house legal department of up to four attorneys that handles insurance-related matters for both Newly Weds and Mullins. (*Id*. ¶ 15.) Between 2009 and the present, Newly Weds' legal department has provided notice to its insurance brokers and/or carriers of approximately 18 lawsuits, claims, and/or demands. (*Id*. ¶ 16.)

In April 2019, a fire destroyed Newly Weds' corporate headquarters in Chicago, which impacted the availability of business records. (Mullins' Statement of Additional Material Facts ¶ 4, ECF No. 52.) Additionally, beginning in early 2020, the COVID-19 pandemic caused volatility and operational disruption in Newly Weds' business. (*Id*. ¶ 5.)

There is a dispute as to whether Mullins first became aware of the *Galan* Lawsuit on March 3, 2021, when outside counsel, Nixon Peabody, gave notice to Newly Weds' legal department, including John Seely, Newly Weds' General Counsel, and Daniel Nora, a corporate attorney for Newly Weds. (Citizens' SOF ¶ 17, ECF No. 45.) There is no dispute, however, that Mr. Seely and Mr. Nora were the persons responsible for providing notice to Mullins' insurance broker or insurer (*id*.), or that Mullins was formally served with the *Galan* Complaint on March 5, 2021. (Mullins' Statement of Add'l Material Facts ¶ 6, ECF No. 52.)

Although Newly Weds had a list at the time of Mullins' pre-acquisition policies and coverages, it did not have complete copies of Mullins' general liability policies. (Citizens' SOF ¶ 19, ECF No. 45.) Between March and June 2021, Newly Weds' in-house legal department

attempted to compile a complete set of Mullins' pre-acquisition insurance policies, including inspecting the on-site files at Mullins' facility in Broadview, Illinois. (Mullins' Statement of Add'l Material Facts ¶ 10, ECF No. 52.) It was unable to do so (*id*.), so in April 2021, Mr. Nora reached out to Newly Weds' broker, Willis Towers Watson ("Willis"), to determine if there was insurance that would potentially cover the *Galan* Lawsuit. (Citizens' SOF ¶ 20, ECF No. 45.) Willis did not have copies of the policies but advised that CGL insurers were not accepting coverage for BIPA lawsuits and were filing related declaratory judgment actions. (*Id*.; Mullins' Statement of Add'l Material Facts ¶ 12, ECF No. 52.) Willis advised that Newly Weds would need cyber coverage to cover BIPA claims, which it did not have. (Mullins' Statement of Add'l Material Facts ¶ 13, ECF No. 52.)

On April 12, 2021, the court in *Galan* entered an order staying the case "for all purposes" pending appellate court rulings affecting certain legal issues in the case, including the applicable statute of limitations. (*Id*. ¶ 14.) A subsequent motion to stay was granted on May 18, 2022, and so no activity had occurred in the *Galan* Lawsuit as of the filing of the parties' briefing in this case. (*Id*.)

In May 2021, Mullins became aware of the Illinois Supreme Court's decision in *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47 (Ill. 2021) finding the insurer owed a duty to defend against BIPA claims under the policy at issue. (*Id*. ¶ 15.) In June 2021, Mr. Nora reached out to Mullins' former broker, HUB International ("HUB"), to obtain complete copies of Mullins' policies. (Citizens' SOF ¶ 22, ECF No. 45.) Matthew Johnson at HUB reiterated to Mr. Nora that general liability carriers were not accepting coverage for BIPA suits. (*Id*. ¶ 23.) Newly Weds nonetheless believed that there was a potential for insurance coverage for the *Galan* Lawsuit. (*Id*. ¶ 24 and Mullins' Resp. thereto.)

7

On June 4, 2021, Mr. Nora received complete copies of Mullins' policies, which he then reviewed. (*Id*. ¶ 25.) On June 18, 2022, Mr. Nora sent an email to HUB stating, "After further discussions, we will not be noticing up a claim." (*Id*. ¶ 26.) At that time only Mr. Seely had the authority to give notice of the *Galan* Lawsuit, and Mullins' corporate designee testified that Mr. Seely decided the company was not prepared to notice the claim at that time and decided instead to monitor the evolving case law. (*Id*. ¶ 27 and Mullins' Resp. thereto; Mullins' Statement of Add'l Material Facts ¶ 19, ECF No. 52, and Citizens' Resp. thereto.) Around that time, Mr. Seely announced his retirement and began to transition out of his role as GC. (Mullins' Statement of Add'l Material Facts ¶ 18, ECF No. 52.)

In September 2021, Timothy Whelan replaced Mr. Seely as GC for Newly Weds. (Citizens' SOF ¶ 28, ECF No. 45.) Mr. Whelan began to familiarize himself with the various legal issues faced by Newly Weds and its global subsidiaries, including the company's insurance program. Mullins' Statement of Add'l Material Facts ¶ 20, ECF No. 52.)

On January 6, 2022, Mr. Nora emailed Mr. Johnson requesting that HUB again send him Mullins' general liability policies. (*Id*. ¶ 29.) The policies were again sent to Newly Weds that same day. (*Id*.) On January 25, 2022, Newly Weds—upon Mr. Whelan's decision—instructed HUB to give notice to Citizens of the *Galan* Lawsuit. (*Id*. ¶¶ 30, 32.)

HUB provided Citizens a first notice of loss on January 26, 2022. (*Id*. ¶ 33.) Less than 24 hours later, Citizens referred the claim to outside counsel. (Mullins' SOF ¶ 18, ECF No. 54, and Citizens' Resp. thereto.) It is disputed whether Citizens has a standard investigation procedure, and whether it carried out that procedure here. (*Id*.) By letter dated March 9, 2022, Citizens issued a letter stating that it declined to provide coverage for the *Galan* Lawsuit under the Policies and intended to file a declaratory judgment action. (*Id*. ¶ 19 and Citizens' Resp. thereto.)

Five days later, Citizens filed this declaratory judgment action. (*Id.* ¶ 20.) Mullins has incurred attorney's fees and expenses in defense of the *Galan* Lawsuit. (*Id.* ¶ 22.)

### D. The Declaratory Judgment Action

On March 14, 2022, Citizens filed this declaratory judgment action against Mullins and Galan,[3] seeking a declaration that it has no duty to defend or indemnify Mullins in the *Galan* Lawsuit because: (I) the *Galan* Lawsuit is a "claim" that was first made against Mullins after the expiration of the 2016 and 2017 Policies' policy periods such that the cyber liability coverage part does not apply; (II) the Employment Practices Liability Exclusion bars coverage under the Policies; (III) the Recording and Distribution of Material Or Information In Violation of Law Exclusion bars coverage under the Policies; (IV) the Access Or Disclosure Of Confidential Or Personal Information Exclusions bar coverage under the 2016 and 2017 Policies; and (V) Mullins did not give notice of the *Galan* Lawsuit "as soon as practicable" in breach of the notice condition of the Policies.

Mullins filed a counterclaim, seeking a declaration that Citizens is obligated to defend and indemnify Mullins against the *Galan* Lawsuit (Count I) and that by failing to do so, Citizens has breached its obligations under the Policies (Count II).

The parties filed the instant cross motions for summary judgment regarding whether Citizens has a duty to defend Mullins against the *Galan* Lawsuit. Specifically, the parties' cross motions address whether the three invoked exclusions apply, whether Mullins breached its notice obligation, and whether Citizens breached the insurance policy by failing to provide a defense. Because the cross motions do not address Citizens' claims respecting cyber liability coverage

---

[3] Citizens alleges that Galan is joined in the suit as a nominal party defendant. Because Galan's status in this case is not implicated by the pending motions, the Court does not address that issue.

and whether a claim was timely made thereunder, or the duty to indemnify (including whether determining indemnification is ripe at this stage of the proceedings if Citizens is found to have a duty to defend), the Court does not address those issues in this Opinion.

Jurisdiction is proper over this action because the amount in controversy exceeds $75,000 and the parties are completely diverse. 28 U.S.C. §§ 1332(a)(1). (Mullins' SOF ¶ 3, ECF No. 54.) Plaintiff and counter-defendant Citizens is a citizen of Michigan and Massachusetts. (*Id.* ¶ 2.) Defendant and counter-plaintiff Mullins, and defendant Galan, are citizens of Illinois. (*Id.* ¶ 1.)

## II.    Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The construction of an insurance policy's provisions is a question of law." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). In other words, failure to support any essential element of a claim renders all other facts immaterial. *Id.* at 323. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).

### III.    Discussion

The parties appear to agree that Illinois law governs the Court's interpretation of the Policy. "An insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). When determining whether an insurer has a duty to defend, before considering whether any exclusion bars coverage under an insurance policy, a court must first determine whether the allegations of the underlying lawsuit fall within or potentially within the scope of any insuring agreement. *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 996 (7th Cir. 2023); *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole . . . , with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Outboard Marine*, 607 N.E.2d at 1212 (citations omitted).

Here, if the *Galan* Complaint "states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," Citizens must provide a defense. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir. 1992) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)).

### A.  The Insuring Agreement

The Citizens Policies insure "personal and advertising injury," according to the other terms and condition of the Policy. The question thus is whether the *Galan* Lawsuit alleges "personal and advertising injury," which is defined in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . e. Oral or written publication, in any manner, of material that violates a person's right of privacy[.]" The

11

Policy does not define the terms "publication," "material," or "right of privacy," and so they must be afforded "their plain, ordinary, and popular meanings." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 316 (Ill. 2006).

The Illinois Supreme Court considered materially similar policy language and terms with respect to BIPA claims in *West Bend Mutual Insurance Company v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). First, the court found that the underlying complaint alleged a potential injury based on the allegations that plaintiff "suffered emotional upset, mental anguish, and mental injury" from the employer's "collecting and sharing his biometric identifiers and biometric information" with a third-party vendor. *Id*. at 59. Second, the court found that the undefined term "publication" was ambiguous and so would be strictly construed against the insurer to include a communication with a single party. *Id*. at 57, 59. Third, the court found that the underlying complaint alleged a potential violation of the plaintiff's right to privacy because under BIPA, disclosing a person's biometric identifiers or information without his or his consent or knowledge necessarily violates that person's right to privacy in biometric information. *Id*. at 58-59. Accordingly, the allegations in the underlying complaint fell within or potentially within the policies' coverage for personal and advertising injury. *Id*. at 59.

Like in *Krishna Schaumburg Tan*, the *Galan* Complaint alleges, among other things, that Mullins improperly disseminated its employee's biometric data to at least one third-party in violation of the BIPA. It further alleges that Galan and others similarly situated have suffered an injury based on the improper disclosure of their biometric data to third parties. Accordingly, the *Galan* Lawsuit falls within or potentially within the scope of the personal and advertising injury insuring agreement in the Citizens Policies.

### B. The Exclusions

The Court turns next to whether any of the three exclusions asserted by Citizens bar coverage of the *Galan* Lawsuit. The burden falls on the insurer to affirmatively establish that an exclusion applies. *Wynndalco Enters.*, 70 F.4th at 997 (citation omitted). "Exclusions are read narrowly and apply only if their application is clear and free from doubt." *Id*. (citations omitted). "As a general matter, an ambiguity should be resolved against the insurer and in favor of the insured." *Id*. at 999 (citing *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 999-1000 (7th Cir. 2018)).

### a. Recording And Distribution Of Material or Information In Violation Of Law Exclusion

Citizens invokes the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, which excludes from coverage "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:" (1) the TCPA; (2) the CAN-SPAM Act of 2003; (3) the FCRA and FACTA; or "(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Citizens argues that the *Galan* Lawsuit and the BIPA violations alleged therein fall within the fourth, catch-all provision and so are excluded from coverage.

Mullins argues in opposition that the Illinois Supreme Court in *Krishna Schaumburg Tan* rejected the application of a similar exclusion to BIPA claims. 183 N.E.3d at 61. Mullins cites to district court opinions that rely on *Krishna Schaumburg Tan* in finding that exclusionary language identical to that in the Citizens Policy is ambiguous and so must be construed in favor

of coverage of BIPA claims. *See, e.g.*, *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 853 (N.D. Ill. 2022). Citizens in turn argues that the exclusionary language at issue in *Krishna Schaumburg Tan* is distinguishable, as multiple district courts found when holding that language identical to that at issue here barred coverage of BIPA claims. *See, e.g.*, *Cont'l W. Ins. Co. v. Cheese Merchs. of Am., LLC*, No. 21-CV-1571, 2022 WL 4483886, at *9 (N.D. Ill. Sept. 27, 2022), *abrogated by Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 990 (7th Cir. 2023). In short, at the time the parties filed their briefs, there was a division in the district courts over the application of the catch-all provision in the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion to BIPA claims.

Since the filing of the parties' briefs, however, the Seventh Circuit has resolved this division. In *Wynndalco Enterprises*, the Seventh Circuit considered an exclusion in a Citizens policy that was the same in all material respects to the one in the Citizens Policies here and held in favor of the insured. 70 F.4th at 997. As a preliminary matter, the court found that "a literal, plain-text reading of the catch-all provision would include BIPA violations." *Id*. The court then went on to consider that the Citizens policy there, like the Citizens Policies here, "purports, in the first instance, to provide liability coverage for a 'personal and advertising injury,' which the policy defines broadly to include not only the oral or written publication of material that violates a person's right of privacy[,] but also, *inter alia*, the oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ; the use of another's advertising idea in one's own 'advertisement,' . . . ; and infringing upon another's copyright, trade dress, or slogan in one's own 'advertisement[.]'" *Id*. (citations omitted). The court noted that "[t]hese are all injuries that are subject to, or potentially subject to, statutory causes of action." *Id*. (citations omitted). As a result, reading the

exclusion's catch-all provision literally and broadly would "all but eliminate coverage for certain claims that are largely, if not exclusively, statutory in nature (intellectual property claims in particular) and that the policy by its express terms otherwise purports to cover." *Id*. at 998. This conflict between the policy provisions granting and excluding coverage gave rise to ambiguity, which the court resolved in favor of the insured. *Id*. The Seventh Circuit also considered the Illinois Supreme Court's reasoning in *Krishna Schaumburg Tan* and found both that the difference in the language of the violation of statutes exclusion at issue rendered it distinguishable and that various canons of construction (*ejusdem generis* and *noscitur a sociis*) did not resolve the ambiguity presented in the Citizens policy. *Id*. at 1000-02.

Because the Citizens Policies are the same in all respects that were material to the Seventh Circuit's analysis, the opinion in *Wynndalco Enterprises* directly controls, and is dispositive of, the parties' dispute over the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion in this case. The exclusion is ambiguous and so does not apply here to bar coverage of the *Galan* Lawsuit.

### b. Access Or Disclosure Of Confidential Or Personal Information Exclusion

Citizens also invokes the Access Or Disclosure Of Confidential Or Personal Information Exclusion, which excludes from coverage, "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." Citizens contends that the allegations in the *Galan* Lawsuit alleging wrongful dissemination of the putative class members' private biometric information, such as fingerprints and handprints, fall within the scope of the exclusion.

15

Multiple courts within this district have found that similar exclusions bar coverage for underlying BIPA claims. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2023 WL 319235, at *4 (N.D. Ill. Jan. 19, 2023); *Cheese Merchs. of Am.*, 2022 WL 4483886, at *9; *Am. Fam. Mut., Ins. Co., S.I. v. Carnagio Enters., Inc.*, No. 20 C 3665, 2022 WL 952533, at *9 (N.D. Ill. Mar. 30, 2022). However, several other courts in this district that have considered this same issue found the other way—in favor of the insured. *See Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 855 (N.D. Ill. 2022); *Citizens Ins. Co. of Am. v. Highland Baking Co., Inc.*, No. 20-CV-04997, 2022 WL 1210709, at *1 (N.D. Ill. Mar. 29, 2022); *Am. Fam. Mut. Ins. Co. v. Caremel, Inc.,* No. 20 C 637, 2022 WL 79868, at *3 (N.D. Ill. Jan. 7, 2022). This Court finds the reasoning of the latter decisions to be most persuasive, particularly in light of the Seventh Circuit's recent opinion discussing the same canons of interpretation invoked by the parties here, albeit in respect to a different exclusion. *Wynndalco Enters.*, 70 F.4th at 1003-04.

The Court begins with the text of the exclusion, the first clause of which broadly carves out of the coverage grant "'personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information. . . ." The word "any" has a broad meaning. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976))). "Personal information" is not defined in the Policies, but it takes no stretch of the imagination to find that it would include information typically kept private. *See Personal*, Oxford English Dictionary, https://www.oed.com/view/Entry/141482 (last visited June 29, 2023) ("Of, relating to, concerning, or affecting a person as a private individual (rather than as a member of a group or

the public, or in a public or professional capacity); individual, private; one's own.");
*Information*, Oxford English Dictionary, https://www.oed.com/view/Entry/95568 (last visited
June 29, 2023) ("Knowledge communicated concerning some particular fact, subject, or event.").
Fingerprints and handprints are unique to a specific person, which is "why companies want
[them] and use [them]." *Cheese Merchs. of Am.*, 2022 WL 4483886, at *6; *cf. Bryant v. Compass
Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en
banc* (June 30, 2020) (fingerprints are private information). A literal, plain-text reading of the
first clause would include fingerprint and handprint scans.

Based on Citizens' interpretation of the exclusion, the Court's analysis would end there.
But the first clause does not stand alone, and the Court must consider the language of the
exclusion—and indeed, the policy—as a whole. *Swiderski Elecs.*, 860 N.E.2d at 314 ("Like any
contract, an insurance policy is to be construed as a whole, giving effect to every provision, if
possible, because it must be assumed that every provision was intended to serve a purpose.").

The remainder of the exclusion begins with "including," followed by a list of examples: "
. . . including patents, trade secrets, processing methods, customer lists, financial information,
credit card information, health information or any other type of nonpublic information."
Fingerprints, handprints, or other biometric information are not expressly listed. Mullins argues
that the listed examples are types of sensitive information traditionally kept private for financial
or proprietary reasons (*i.e.*, patents, trade secrets, processing methods, consumer lists, financial
information, and credit card information), or for personal reasons (*i.e.*, health information), and
that fingerprints are neither intellectual property nor financial information, and would "stretch
the definition of health information to include a physical characteristic that has nothing to do
with the state of health of the individual." *Caremel*, 2022 WL 79868 at *3. Mullins invokes

17

*ejusdem generis*, "a textual canon that seeks to clarify a broad or general term by looking to the specific items preceding that term for clues as to how that term should be construed," *Wynndalco Enters.*, 70 F.4th at 999, and the related textual canon of *noscitur a sociis*. However, those canons "come[] into play only if there is some doubt about the meaning of the terms used in a contract or statute[.]" *Id.* The Court accordingly sets that argument aside for the moment to determine whether the exclusion is ambiguous in the first instance.

Citizens argues that even if the Court were to consider the list of examples, it begins with the illustrative and non-exhaustive term "including." *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation."). And the list ends with "any other type of nonpublic information," which courts have noted is so broad "it is hard to think of a wider umbrella." *Cheese Merchs. of Am.*, 2022 WL 4483886, at *8. As with the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, the breadth of Citizens' interpretation of the Access Or Disclosure Of Confidential Or Personal Information Exclusion threatens to "swallow a substantial portion of the coverage that the policy otherwise explicitly purports to provide in defining a covered 'personal or advertising injury[.]'" *Wynndalco Enters.*, 70 F.4th at 999; *supra* Section III.B.a. Under Citizens' interpretation, the Citizens Policy gives with one hand coverage for injury arising out of a "publication . . . of material that violates a person's right of privacy" but would take away with the other hand injury "arising out of any access to or disclosure of any person's . . . confidential or personal information"—full stop.

Of course, the "right of privacy" is commonly understood to encompass more than just preventing access to or disclosure of confidential or personal information. The Seventh Circuit

admonishes district courts to take care when interpreting the meaning of "privacy" in the context of an insurance policy:

> 'Privacy' is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. . . A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted pregnancy, has both informational (secrecy) and locational (seclusion) components, with an overlay of substance (the objection to governmental regulation).

*Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 941 (7th Cir. 2004) (citations omitted). The court, without having had any Illinois cases on point as guidance at that time, found that the structure of the policy, and specifically the use of the term "publication," "strongly implies that coverage is limited to secrecy interests." *Id*. The Illinois Supreme Court subsequently disagreed, however, holding that because the "right of privacy" "connotes both an interest in seclusion and an interest in the secrecy of personal information," the policy language "'material that violates a person's right of privacy' can reasonably be understood to refer to material that violates a person's seclusion[,]" including a TCPA fax-ad claim for sending unsolicited fax advertisements. *Swiderski Elecs.*, 860 N.E.2d at 317. The Seventh Circuit's underlying point nonetheless holds; "publication" of information—a requisite to coverage—is more often relevant to a secrecy interest than a seclusion interest.

Some district courts point out that even a broad interpretation of the Access Or Disclosure Of Confidential Or Personal Information Exclusion would not necessarily preclude coverage for claims brought under the tort of false light or the appropriation of one's name or identity for personal gain. *Cheese Merchs. of Am.*, 2022 WL 4483886, at *8. And the exclusion would not bar coverage for the TCPA fax-ad claims at issue in *Swiderski Electronics*—although

19

claims for violations of the TCPA are otherwise expressly excluded by the Policy's Recording And Distribution Of Material Or Information In Violation Of Law Exclusion. But even where "a plain-text reading of the exclusion might not render the coverage promised earlier in the policy for 'personal and advertising injuries' *wholly* illusory," where the exclusion all but eliminates coverage for certain claims that the policy by its express terms otherwise purports to cover, the exclusion is ambiguous. *Wynndalco Enters.*, 70 F.4th at 998 (emphasis original). Here, where the Access Or Disclosure Of Confidential Or Personal Information Exclusion broadly construed would eliminate a vast swath of privacy violation claims based on the publication of personal information that the insuring agreement otherwise purports to cover, the exclusion is ambiguous.

Having found that the exclusion is ambiguous, the Court returns to *ejusdem generis* and *noscitur a sociis* to determine whether it can resolve the ambiguity. *Cf. id.* at 999 ("But we can now consider whether resort to textual canons, and in particular, *ejusdem generis*, results in a plausible, more narrow reading of the catch-all provision that would nonetheless encompass an injury resulting from a violation of BIPA[.]"). *Ejusdem generis* seeks to clarify the meaning of a broad or general term "on the ground that, if the general words were given their full and ordinary meaning, the specific words would be superfluous as encompassed by the general terms. If the [drafter] had meant the general words to have their unrestricted sense, it would not have used the specific words." *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009) (citing 2A N. Singer & J. Singer, Sutherland on Statutory Construction § 47:17 at 370-73 (7th ed. 2007)). For example, "where a will leaves to a particular devisee 'my furniture, clothes, cooking utensils, housewares, motor vehicles, and all other property,' the general phrase 'all other property' will, absent contrary signals, be construed in light of the specific items previously named to include not *all* types of property, including real estate, but only other items of personal

20

property." *Wynndalco Enters.*, 70 F.4th at 1000 (emphasis original) (citing Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012)).

The Court finds that *ejusdem generis* is unhelpful here for two reasons. Typically, *ejusdem generis* is applied only where general words follow specific words. *Id.* ("Where general words follow specific words ..., the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quoting *Yates v. United States*, 574 U.S. 528, 545, (2015))); *Carnagio Enters.*, 2022 WL 952533, at *8 n.7 ("Authorities have traditionally agreed that ... [*ejusdem generis*] does not apply to a general-specific sequence. . . . In all contexts other than the pattern of specific-to-general, the proper rule to invoke is the broad associated-words canon, not the narrow *ejusdem generis* canon." (quoting Scalia and Garner, *supra*)). Here, the list may include several specific examples followed by a general catch-all phrase, but the list itself follows and modifies the more general language of the first clause.

The Court might nonetheless consider whether the catch-all language of "any other type of nonpublic information" can be given a more focused scope by locating a common element among the seven specific examples given just prior to the catch-all provision ("patents, trade secrets, processing methods, customer lists, financial information, credit card information, [and] health information") and imputing that same element to the catch-all provision itself. However, *ejusdem generis* does not apply when the items "are not sufficiently similar to belong to one identifiable class." *Hugh v. Amalgamated Tr. & Sav. Bank*, 602 N.E.2d 33, 38 (Ill. App. Ct. 1992). At first blush, these examples include information that a person has a right to maintain as confidential, such as trade secrets, which can include processing methods and customer lists. *See, e.g.*, *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) ("trade secrets" or

"something comparable whose economic value depends on its secrecy" may be filed under seal). But as other courts have pointed out, patents are publicly available information. *See Carnagio Enters.*, 2022 WL 952533, at *8 (citing 37 C.F.R. § 1.11 (2021)). Because the items listed in this exclusion "have no readily identifiable common thread[,]" *ejusdem generis* does not resolve the ambiguity presented by the exclusion. *Id.*

The closely related but broader textual canon of *noscitur a sociis* fails to resolve the ambiguity for the same reason. "[T]he principle of *noscitur a sociis*—a word is known by the company it keeps—[is used] to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words[.]'" *Wynndalco Enters.*, 70 F.4th at 1004 (quoting *Yates*, 574 U.S. at 543). Under that canon, the Court might consider whether the broad and general term "personal information" is given a more precise meaning by the examples that follow it. As previously discussed, however, there are no readily discernable clues in the list that point to any particular feature as a harmonizing factor. *See id.*

Because the Court is left with the conclusion that the Access Or Disclosure Of Confidential Or Personal Information Exclusion is ambiguous, the Court construes the exclusion in favor of the insured. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 721 (7th Cir. 2015). For these reasons, the exclusion does not bar coverage of the *Galan* Lawsuit.

### c. Employment-Related Practices Exclusion

Finally, the Citizens Policy excludes from coverage "Personal and advertising injury" to:

(1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;. .
    . . .

Citizens argues that the BIPA claims in the *Galan* Lawsuit fall within the scope of subsection (1)(c) and so are excluded from coverage. As the argument goes, the underlying claims stem from Mullins' policy of unauthorized disseminating of biometric information to third parties for the purposes of timekeeping and payroll, which allegedly is a violation of an individual's right to biometric privacy, and so constitutes an "employment-related practice" similar to defamation, harassment, or humiliation. Citizens points to *Caremel* in support, which held that a substantially identical exclusion applied to preclude coverage of the underlying BIPA putative class action. 2022 WL 79868, at *4.

The Court finds that the plain language of the Employment-Related Practices Exclusion unambiguously does not encompass the *Galan* Lawsuit. The phrase "Employment-related practices, policies, acts or omissions" is modified by the phrase "directed at that person"—an interpretation which does not appear to be in dispute. Citizens argues that even though Mullins disclosed more than one employee's biometric information, each individual employee was injured and so the dissemination of his or her biometric information was "directed at" that employee. Oddly, in an effort to distinguish from *Caremel*, Mullins concedes that BIPA violations are "directed at" individual employees.

This Court disagrees. Several courts in this district that have addressed this precise issue have found that the exclusion requires an action or omission "taken against a worker in the employment context in a targeted, personal way." *Thermoflex Waukegan*, 2023 WL 319235, at *10; *see also Tony's Finer Foods Enters.*, 589 F. Supp. 3d at 930; *Carnagio Enters.*, 2022 WL 952533, at *6. Additionally, Illinois cases interpreting substantially similar employment-related practices exclusions in other contexts have found that "the salient question is whether the [allegations giving rise to the underlying complaint] were made in the context of [the

23

employee's] employment *and related to his employment performance.*" *Am. All. Ins. Co. v. 1212 Rest. Grp., L.L.C.*, 794 N.E.2d 892, 900 (Ill. App. Ct. 2003) (emphasis added); *see also Am. Econ. Ins. Co. v. Haley Mansion, Inc.*, 2013 IL App (3d) 120368-U, ¶ 24. In other words, the underlying claim "must involve an action related to an employee's performance." *Carnagio Enters.*, 2022 WL 952533, at *5. It cannot be said that Mullins' general policy of disseminating biometric information without consent was targeted at Galan or any specific employee, nor does such a policy relate to any particular employee's performance.

The text and the structure of the exclusion support the Court's interpretation. Subsection (1)(c) provides a non-exhaustive list of examples of "employment-related practices, policies, acts or omissions," prefaced by the term "such as," that include some legal claims (defamation, harassment, discrimination, malicious prosecution), some adverse employment actions (demotion, evaluation, reassignment, discipline), and some other personalized harms that may occur in the workplace setting (coercion, humiliation). *See Thermoflex Waukegan*, 2023 WL 319235, at *9; *see also Enis v. Cont'l Ill. Nat'l Bank & Tr. Co. of Ill.*, 795 F.2d 39, 42 (7th Cir. 1986) ("The words "include" and "such as" show that the specific instances are illustrative, not exhaustive.") Again, "all can fairly be characterized as actions taken against a worker in the employment context in a targeted, personal way." *Thermoflex Waukegan*, 2023 WL 319235, at *9. So too can the first two subparts—refusal to hire and termination—be characterized as actions that an employer takes against a particular employee or prospective employee.

Adding the unauthorized dissemination of biometric information for timekeeping and payroll purposes to the list "would stick out like a sore thumb." *Tony's Finer Foods Enters.*, 589 F. Supp. 3d at 928. While Mullins' actions can fairly be described as an employment practice, it is "a categorically different type of practice than everything else in the list." *Id*. For this reason,

several district courts have found similar employment-related practices exclusions to be ambiguous with respect to BIPA claims and thus resolved the ambiguity in favor of the insured. *See Thermoflex Waukegan*, 588 F. Supp. 3d at 856; *Cheese Merchs. of Am.*, 2022 WL 4483886, at *4; *Highland Baking Co.*, 2022 WL 1210709, at *1. Here as well, even if the Court did not find that the *Galan* Lawsuit unambiguously falls outside the scope of the exclusion, there is at least ambiguity that must be resolved in the insured's favor.

For these reasons, Citizens fails to show that the allegations of the *Galan* Lawsuit fall within the scope of the Employment-Related Practices Exclusion.

### C. Notice

The Policies require Mullins to provide notice of a "suit" against it "as soon as practicable." It is undisputed that nearly ten months passed between the day Mullins was served with the *Galan* Complaint and the day that it tendered notice of the suit to Citizens. Citizens argues that a ten-month delay is unreasonable as a matter of law and breached the notice condition of the Policies, and so Citizens has no duty to defend or indemnify the *Galan* Lawsuit.

In Illinois, "notice provisions are valid prerequisites to coverage and not mere technical requirements which the insured is free to overlook or ignore with impunity." *Kerr v. Illinois Cent. R. Co.*, 670 N.E.2d 759, 765 (Ill. App. Ct. 1996). Where the insured fails to comply with a notice provision, the insurer may be relieved from its duties to defend and indemnify under the policy. *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 921 (Ill. App. Ct. 2000). Where, as here, the policy requires the insured to notify the insurer of a lawsuit "as soon as practicable," the test is whether notice was given within a reasonable time. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 833 N.E.2d 871, 874 (Ill. App. Ct. 2004), *aff'd*, 856 N.E.2d 338 (Ill. 2006).

25

"Whether notice has been given within a reasonable time depends on the facts and circumstances of each case." *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 293-94 (2010) (citing *Livorsi*, 856 N.E.2d at 343). Courts weigh the "presence or absence of prejudice to the insurer," as well as "specific language of the policy's notice provision, the insured's sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, and the insured's diligence in ascertaining whether policy coverage is available." *Livorsi*, 856 N.E.2d at 344, 346; *see also State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 358 (7th Cir. 2017). "No one factor trumps the others in this totality-of-the-circumstances analysis." *Id*. If the facts are undisputed, the reasonableness of notice to an insurer is a question of law appropriate for disposition on summary judgment. *Kerr,* 670 N.E.2d at 768. That being said, "[t]he timeliness of an insured's notice to its insurer generally is a question of fact for the trier of fact." *Yorkville Nat. Bank*, 939 N.E.2d at 293.

Here, the undisputed facts weigh equally in favor of and against finding that notice was reasonable, but ultimately there remain unresolved issues of material fact that preclude summary judgment. On the one hand, Citizens does not argue that it was prejudiced by the ten-month delay, and indeed there seems to be little risk or evidence that Citizens was unable to protect its interests considering the *Galan* Lawsuit was stayed between April 2021 and the time the parties filed their briefing on the instant motion. *Cf. Livorsi*, 833 N.E.2d at 874 (noting the notice provision gives the insurer the opportunity to investigate the claim and participate in the defense of the insured, thereby protecting its interests). On the other hand, Mullins knew it was being sued in the *Galan* Lawsuit by the first week in March 2021, and had a team of in-house lawyers whose job was, in part, to oversee risk management for the company. Mullins was sophisticated enough in insurance matters to understand that it was being sued and might have an insurance

26

claim—a conclusion that is supported by the undisputed fact that Mullins began investigating into its insurance policies that same month.

Where the question of material fact remains is in determining Mullins' diligence in ascertaining whether the *Galan* Lawsuit would be covered. "Courts have recognized that an insured's reasonable belief of noncoverage under a policy may be an acceptable excuse for the failure to give timely notice, even where the delay is lengthy." *Yorkville*, 939 N.E.2d at 294-95. "Whether the insured, acting as a reasonably prudent person, believed the . . . lawsuit was not covered by the policy is a question of fact[.]" *Id.* at 295; *W. Bend Mut. Ins. Co. v. TRRS Corp.*, 2022 IL App (2d) 210506, ¶ 20 (finding facially valid reasons to doubt that a claim would have been covered raises a fair question of fact as to the insured's diligence that precludes the entry of summary judgment).

Mullins requested and received opinions from two different insurance brokers, in April and again in June 2021, that insurance companies were denying coverage under general liability policies for BIPA lawsuits such as the *Galan* Lawsuit. *Yorkville*, 939 N.E.2d at 295 (upholding the factfinder's determination that "[a] reasonably prudent party in the position of the insured would not have continued to pursue coverage under the policy having been informed by its agent that the policy afforded no coverage"). Mullins submitted evidence that it monitored developments in Illinois law, which—as set forth at length above—was evolving between March 2021 and January 2022. Then the person with the authority to notice a claim, GC Mr. Seely, announced his plan to retire in June 2021 and decided to leave the decision whether to file a notice, despite the brokers' advice, to his replacement. When Mr. Whelan took over in September 2021, he considered the matter and ultimately decided to tender notice in January 2022. This is not a situation where Mullins did "*nothing* other than glance at [its] policy" for

27

months, making a delay unreasonable as a matter of law. *Brumit*, 877 F.3d at 361. Rather,

Mullins had valid reasons to doubt that Citizens would have accepted coverage of the *Galan*

Lawsuit, which raises a question of fact as to Mullins' diligence that precludes finding its delay

in giving notice to be unreasonable as a matter of law. *See TRRS Corp.*, 2022 IL App (2d)

210506, ¶ 20 (11-month delay was not unreasonable as a matter of law).

### D. Breach of Contract Counterclaim

It is well-established in Illinois that "an insurer which takes the position that a complaint

potentially alleging coverage is not covered under a policy that includes a duty to defend may not

simply refuse to defend the insured." *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d

1122, 1134-35 (Ill. 1999). Rather, "[u]nder Illinois law, an insurer has three options if it contests

its duty to defend: (1) seek a declaratory judgment regarding its obligations before trial of the

underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to

defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have

breached its duty to defend and estopped from asserting defenses as to payment based on non-

coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 349 (7th

Cir. 2010). Here, Citizens indisputably pursued the first option.

The Court has found that the three exclusions invoked by Citizens do not apply to bar

coverage, but that issues of material fact remain as to whether Mullins failed to comply with the

notice provision of the Policies, thereby relieving Citizens of its duty to defend. *Supra*. If it is

ultimately determined that Mullins breached the notice provision and so Citizens has no duty to

defend, Mullins would have no basis to pursue its breach of contract claim. *See Joseph T.*

*Ryerson & Son, Inc. v. Travelers Indem. Co. of Am.*, 165 N.E.3d 439, 457 (Ill. App. Ct. 2020);

*Hartford Cas. Ins. Co. v. ContextMedia, Inc.*, 65 F. Supp. 3d 570, 586 (N.D. Ill. 2014).

If it is ultimately determined that Mullins gave reasonable notice and so Citizens has a duty to defend it against the *Galan* Lawsuit, Citizens argues that it cannot in any event be held liable for breach of the duty to defend because it promptly sought a declaratory judgment of no coverage. Mullins concedes that it does not assert estoppel in this case, and it neither contends that Citizens was dilatory in seeking a declaration of its obligations under the Policies nor acted in bad faith. The question thus is whether Citizens can be found in breach of the duty to defend if it contests coverage but promptly seeks a declaratory judgment that there is no duty to defend, without going so far as to say that it is estopped from raising policy defenses to coverage.

Under Illinois law, an insurer does not breach its duty to defend by contesting coverage and timely seeking a declaration that it owes no duty to defend. *See, e.g.*, *Santa's Best Craft*, 611 F.3d at 349-50 (finding no breach of the duty to defend because the insurer timely filed a cross-motion and counterclaim seeking a declaration that it did not have a duty to defend); *Arch Ins. Co. v. PCH Healthcare Holdings, LLC*, No. 18 C 02691, 2019 WL 3554062, at *6 (N.D. Ill. Aug. 5, 2019); *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1232 (Ill. 1999) (holding insurer did not breach the duty to defend because it contested coverage and sought a declaration of no duty to defend); *L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 433 (Ill. App. Ct. 2006); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 969 (Ill. App. Ct. 2001) (affirming trial court's ruling that insurer had duty to defend but reversing the ruling that insurer breached that duty).

Granted, the issue of breach of the duty to defend typically arises where the insured asserts estoppel. But the fact that Mullins here does not seek estoppel does not change the underlying rationale of the rule permitting an insurer to avoid a breach (and thus estoppel) by

29

seeking a declaratory judgment. In *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, the Illinois Supreme Court explains that rationale:

> It is the purpose of the declaratory judgment action to settle actual controversies *before they have ripened into violations of law or legal duty or breach of contractual obligations*. . . . The parties involved in the controversy can then learn the consequences of their action before they act. . . . While an insurer's statements disclaiming coverage may be couched in terms of denial, such a denial, when alleged in the pleadings or which precedes a promptly filed complaint for declaratory action, is not tantamount to repudiation of the policy obligations. . . . A contrary conclusion would negate the protections for which the declaratory judgment action is designed and ultimately penalize insurers for conduct which we have previously sanctioned as proper.

579 N.E.2d 322, 334 (Ill. 1991) (emphasis added) (internal punctuation and citations omitted). The filing of a declaratory judgment action in lieu of defending the insured "suspend[s] the duty to defend pending the resolution of the declaratory judgment action." *Those Certain Underwriters at Lloyd's v. Pro. Underwriters Agency, Inc.*, 848 N.E.2d 597, 601 (Ill. App. Ct. 2006).

Mullins points to a case finding that "[a]n insurer that breaches its duty to defend is liable to its insured for defense costs" even where the insurer contested coverage and promptly sought a declaration that it had no duty to defend, and estoppel was either not at issue or not warranted. *Gen. Star Indemn. Co. v. Lake Bluff Sch. Dist. No. 65*, 819 N.E.2d 784, 794 (Ill. App. Ct. 2004); *see also Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 893 (N.D. Ill. 2018) (finding insurer, who denied coverage and filed declaratory judgment action, had a duty to defend that it breached when it refused insured's tender); *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 75 F. Supp. 3d 833, 847 (N.D. Ill. 2014) (same), *aff'd,* 829 F.3d 509 (7th Cir. 2016) (affirming only there was a duty to defend). But those cases do not address this precise issue head on. A finding that Citizens breached its duty to defend by contesting coverage

30

and promptly seeking a declaration of no duty to defend would, without more, render illusory the declaratory judgment option that Illinois courts have long upheld.

Because Plaintiffs present no facts upon which Citizens could be found in breach of the duty to defend, summary judgment is granted in Citizens' favor in this limited respect.

## IV.     Motion to Seal

Citizen filed an unopposed motion to seal: (1) Mullins' interrogatory answers; (2) three emails/email chains produced by Mullins; (3) documents produced by Mullins that are exhibits to the Timothy Whelan Deposition Transcript; and (4) portions of Citizens' motion for summary judgment that reference those documents. Under Local Rule 26.2(b), "[t]he court may for good cause shown enter an order directing that one or more documents be filed under seal." Citizens make no such showing other than to imply that the exhibits are designated as "Confidential Information" pursuant to the Agreed Confidentiality Order entered on July 28, 2022. But, under the Agreed Confidentiality Order, the mere designation of a document as "Confidential Information" does not alone amount to the required "good cause" or allow for that document to be filed under seal. (Agreed Confidentiality Order ¶ 7, ECF No. 27.)

"The determination of good cause [to seal materials] cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). A party hoping to file materials in secret must justify the claim of secrecy and "analyze the applicable legal criteria or contend that any document . . . may . . . legitimately . . . be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002); *Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 308833, at *1 (N.D. Ill. Jan. 29, 2021). Without any attempt to show "good cause" in the motion to seal, it cannot be granted as filed. And as filed,

the motion to seal is denied. But the Court will allow the documents to remain provisionally sealed until August 7, 2023, to allow Citizens to file a properly supported motion to seal if it so chooses.

## V. Conclusion

For the reasons discussed, Citizens' motion for summary judgment [41] is denied in part and granted in part, and Mullins' cross motion for summary judgment [53] is denied. Citizens' Unopposed Motion For Leave To File Certain Summary Judgment Motion Exhibits Under Seal [40] is denied without prejudice. Citizens has until August 7, 2023, to file a properly supported motion to seal if it so chooses. A status hearing is set for August 10, 2023 at 9:30 a.m. The parties are directed to file a joint status report by August 7, 2023.

**SO ORDERED.**                                         **ENTERED: July 31, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**