**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **CITIZENS INSURANCE COMPANY OF AMERICA,**<br><br>          **Plaintiff,**<br><br>    v.<br><br>**MULLINS FOOD PRODUCTS, INC., and RICARDO GALAN, individually and on behalf of all others similarly situated,**<br><br>          **Defendants.** | **Case No. 22-cv-1334**<br><br>**Judge Jorge L. Alonso** |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Citizens Insurance Company of America's ("Citizens")

Motion for Reconsideration of Order Denying Summary Judgment (ECF No. 82) ("Motion for

Reconsideration") and Mullins Food Products, Inc.'s ("Mullins") Motion for Partial Relief from

Judgment Pursuant To Federal Rule of Civil Procedure 54(b) (ECF No. 75) ("Motion for Partial

Relief from Judgment").

## BACKGROUND

Citizens brings a five-count complaint for declaratory judgment against Mullins and

Ricardo Galan ("Galan") seeking a declaration that Citizens, which issued an insurance policy to

Mullins, has no duty to defend or indemnify Mullins in the underlying lawsuit filed by Galan,

individually and on behalf of all others similarly situated, under the Illinois Biometric

Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").[1] Mullins filed a counterclaim seeking

a declaration that Citizens is obligated to defend and indemnify Mullins and breached the

---

[1] The parties stipulated to the dismissal of Count I regarding Cyber Liability Coverage. (ECF No. 23.)

1

insurance policy by failing to do so. The parties filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. On July 31, 2023, the Court denied Citizens' motion except with respect to Mullins's breach of contract counterclaim on the duty to defend, which was dismissed, and denied Mullins's cross-motion ("July 31 Opinion"). (July 31 Opinion, ECF No. 61.)

On December 15, 2023, Mullins filed its Motion for Partial Relief from Judgment (ECF No. 75), which has been fully briefed. On December 21, 2023, Citizens filed its Motion for Reconsideration (ECF No. 82), which has also been fully briefed. For the following reasons, Citizens' Motion for Reconsideration is granted and Mullins's Motion for Partial Relief from Judgment is denied.

The Court assumes familiarity with, and incorporates herein, the "Background" section of its July 31 Opinion. (ECF No. 61.)

## Legal Standard

Motions for reconsideration are not specifically authorized by the Federal Rules of Civil Procedure, but courts customarily entertain them under Rules 60(b), 59(e), or 54(b), depending on the stage of the case and the relief sought.

Because the Court's partial denial and partial granting of Citizens' motion for summary judgment was an interlocutory order, not a final judgment, Citizens and Mullins properly bring their respective Motions pursuant to Rule 54(b). *See* Fed. R. Civ. P. 54(b); *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018) ("It is basic procedural law that a denial of summary judgment is an interlocutory ruling."); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015) ("Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b)."). Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all

the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Court therefore has inherent authority to reconsider its denial of Citizens' motion for summary judgment. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").

The standard of review for motions to reconsider brought under Rules 54(b) and 59(e) are virtually identical. *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018). Motions for reconsideration under Rule 54(b) generally "serve the limited function of correcting manifest errors of law or fact." *Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 902 (N.D. Ill. 2015) (internal quotation marks and citation omitted). A party may also use a motion for reconsideration to alert the court to "a significant change in the law or facts." *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015), *aff'd*, 832 F.3d 770 (7th Cir. 2016). The party seeking reconsideration "bears a heavy burden," and such motions "are not at the disposal of parties who want to 'rehash' old arguments." *Patrick*, 103 F. Supp. 3d at 912 (quoting *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005)); *see also Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006), *as amended* (Apr. 11, 2006) ("[A] Rule 59(e) motion 'is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment.'" (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir. 1995))).

Finally, the Court assumes familiarity with, and incorporates herein, the summary judgment "Legal Standard" section of its July 31 Opinion. (ECF No. 61.)

## Discussion

### I.    Citizens' Motion for Reconsideration

Citizens moves the Court to reconsider its ruling regarding two Policy exclusions based on the recent Illinois Appellate Court decision *Nat'l Fire Ins. Co. of Hartford & Cont'l Ins. Co. v. Visual Pak Co., Inc.*, 2023 IL App (1st) 221160. Citizens argues that *Visual Pak* merits a finding that one or both exclusions apply and so it has no duty to defend Mullins in the *Galan* Lawsuit. The parties agree that Illinois law governs the Court's interpretation of the Citizens Policies.

"An insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole . . . , with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). If the *Galan* Complaint "states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," Citizens must provide a defense. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir. 1992) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)).

The Court previously found that the *Galan* Lawsuit falls within or potentially within scope of the personal and advertising injury insuring agreement in the Citizens Policies. (July 31 Opinion 12.) Citizens does not move for reconsideration of that conclusion, focusing only on the

4

two exclusions. The Court assumes familiarity, and incorporates herein, the "Insuring Agreement" section of its July 31 Opinion.

The burden falls on the insurer to affirmatively establish that an exclusion applies. *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 997 (7th Cir. 2023) (citation omitted). "Exclusions are read narrowly and apply only if their application is clear and free from doubt." *Id*. (citations omitted). "As a general matter, an ambiguity should be resolved against the insurer and in favor of the insured." *Id*. at 999 (citing *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 999-1000 (7th Cir. 2018)).

The Court considers each exclusion in turn.

### a. Recording And Distribution Of Material or Information In Violation Of Law Exclusion

In Citizens' motion for summary judgment, it invoked the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion ("Recording and Distribution Exclusion"), which excludes from coverage "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:" (1) the TCPA; (2) the CAN-SPAM Act of 2003; (3) the FCRA and FACTA; or "(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Citizens argued that the *Galan* Lawsuit and the BIPA violations alleged therein fall within the fourth, catch-all provision and so are excluded from coverage. Mullins argued in opposition that this Court should follow the Illinois Supreme Court in *Krishna*, which rejected

5

the application of a similar exclusion to BIPA claims. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 61 (Ill. 2021).[2]

In this Court's July 31 Opinion, the Court noted a division in the federal district courts over the application of the catch-all provision in exclusions similar to the Recording and Distribution Exclusion to BIPA claims at the time the parties filed their briefs. *Compare Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 853 (N.D. Ill. 2022) (relying on *Krishna* in finding that exclusionary language similar to that in the Citizens Policy is ambiguous and so must be construed in favor of coverage of BIPA claims), *with Cont'l W. Ins. Co. v. Cheese Merchs. of Am., LLC*, No. 21-CV-1571, 2022 WL 4483886, at *9 (N.D. Ill. Sept. 27, 2022) (finding exclusionary language similar to the Citizens Policy is distinguishable from the exclusionary language at issue in *Krishna* and barred coverage of BIPA claims), *abrogated by Wynndalco*, 70 F.4th at 990.

This Court went on to explain that after the parties filed their briefs, the Seventh Circuit resolved the division. In *Wynndalco*, the Seventh Circuit considered a "Distribution of Material in Violation of Statutes" exclusion in a Citizens policy that was similar to the one in the Citizens

---

[2] The entirety of the exclusion at issue in *Krishna* read:

> EXCLUSION—VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION
>
> * * *
>
> This insurance does not apply to:
> DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES
> 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:
> (1) The Telephone Consumer Protection Act (TCPA) . . . , including any amendment of or addition to such law; or
> (2) The CAN-SPAM Act of 2003 . . . , including any amendment of or addition to such law; or
> (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 166 N.E.3d 818, 822, *aff'd*, 183 N.E.3d 47; *see also Krishna*, 183 N.E.3d at 52.

Policies here, found that it was ambiguous, and held in favor of the insured. *Wynndalco*, 70 F.4th at 997. The Seventh Circuit found that the Distribution of Material in Violation of Statutes exclusion in the case before it differed materially from the one considered by the Illinois Supreme Court in *Krishna*. *Id*. at 1002–03. This Court found that the exclusionary language in the Citizens Policies in this case were the same in all material respects to the exclusionary language at issue in *Wynndalco* and so *Wynndalco* "directly controls, and is dispositive of, the parties' dispute over the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion in this case." (July 31 Opinion 15.) This Court accordingly held that the exclusion in the Citizens Policies "is ambiguous and so does not apply here to bar coverage of the *Galan* Lawsuit." (July 31 Opinion 15.)

At the time *Wynndalco* was decided, neither the Illinois Appellate Court nor Illinois Supreme Court had addressed a violation-of-law exclusion with language identical to the Distribution of Material in Violation of Statutes Exclusion or the Recording and Distribution Exclusion and whether they apply to BIPA. On December 19, 2023, the Illinois Appellate Court considered the Recording and Distribution Exclusion in *Visual Pak* and distinguished it from the Distribution of Material in Violation of Statutes Exclusion, disagreeing with *Wynndalco*'s application of Illinois law. *Visual Pak Co.*, 2023 IL App (1st) 221160, ¶ 84 ("We cannot agree with the Seventh Circuit's analysis. We do not find it to be an accurate reflection of Illinois law.").

It is well established that a federal district court is bound to follow the decisions of the state's highest court when addressing a state law claim. *Wynndalco*, 70 F.4th at 995; *Clarin Corp. v. Mass. Gen. Life Ins. Co.*, 44 F.3d 471, 474 (7th Cir. 1994). In the absence of a decision from the state's highest court, however, the decisions of a state's intermediate appellate courts

are considered the best indicia of state law. *Todd v. Societe Bic, S.A.*, 9 F.3d 1216, 1228 (7th Cir. 1993); *see also Fid. Union Tr. Co. v. Field*, 311 U.S. 169 (1941) (explaining that if the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts). Both parties acknowledge that where a state appellate court decision disagrees with a Seventh Circuit ruling, the Seventh Circuit ruling remains binding on a federal district court. *See Luna v. United States*, 454 F.3d 631, 636 (7th Cir. 2006) ("[D]ecisions of intermediate state courts . . . do not themselves liberate district judges from the force of our decisions…. If a district court concludes that the intermediate state appellate courts have correctly answered a question this court botched, it should 'report [its] conclusions while applying the existing law of the circuit.'" (citation omitted)); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

Citizens argues that this Court should follow *Visual Pak* because *Wynndalco* is distinguishable and not controlling here—specifically, because there is a material difference between the exclusion at issue in *Wynndalco* and the Recording and Distribution Exclusion at issue in both *Visual Pak* and this case. For this reason, Citizens argues that *Visual Pak* best represents how the Illinois Supreme Court would decide the issue of whether the Recording and Distribution Exclusion applies to BIPA claims. Mullins argues in response that the exclusion addressed in *Wynndalco* is not materially different from the exclusion at issue here, and otherwise argues that the Illinois Appellate Court failed to properly apply the Illinois Supreme Court's holding in *Krishna*. This Court agrees with Citizens.

With the legal principles set forth above in mind, the Court considers the three key opinions at issue that interpret broadly similar violation-of-law exclusions: *Krishna*, *Wynndalco*, and *Visual Pak*.

8

### *Wynndalco*

The exclusion at issue in *Wynndalco* stated,

> This insurance does not apply to:
>
> ...
>
> q. **Distribution of Material in Violation of Statutes**
>
> "Bodily injury," "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
>
> (2) The CAN-SPAM Act of 2003, including any amendment or addition to such law; or
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
> (4) *Any other laws, statutes, ordinances, or regulations, that address, prohibit or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

*Wynndalco*, 70 F.4th 993 (emphasis added by the court).

The Seventh Circuit first noted that "a literal, plain-text reading of the catch-all provision would include BIPA violations." *Id*. at 997. It then went on to find, however, that a plain-text reading of the exclusion as a whole gave rise to ambiguity in "what the policy does or does not cover." *Id*. The court found,

> The Citizens policy purports, in the first instance, to provide liability coverage for a "personal and advertising injury," which the policy defines broadly to include not only the oral or written publication of material that violates a person's right of privacy (§ II(F)(14e)) but also, *inter alia*, the oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services (§ II(F)(14d)); the use of another's advertising idea in one's own "advertisement," (§ II(F)(14f)); and infringing upon another's copyright, trade dress, or slogan in one's own "advertisement" (§ II(F)(14g)). . . . These are all injuries that are subject to, or potentially subject to, statutory causes of action. *See* 740 ILCS 145 (Illinois Slander and Libel Act); 815 ILCS 510/2(a)(8) (Illinois Uniform Deceptive Trade Practices Act provision

defining deceptive trade practices to include commercial disparagement of another's goods, services, or business); 15 U.S.C. § 1125(a) & (c) (Lanham Act provision for civil action seeking relief for false designation of origin, false or misleading description or representation of fact, and dilution of distinctive mark by blurring or tarnishment); 17 U.S.C. § 501 (federal Copyright Act provision for civil action seeking relief for copyright infringement); 765 ILCS 1036/60 (Illinois Trademark Registration and Protection Act provision for civil suit seeking relief for trademark infringement). Reading the exclusion's catch-all provision literally and broadly would essentially exclude from the policy's coverage injuries resulting from all such statutory prohibitions, as they all have to do with the recording, distribution, and so forth of information and material. True, it would still leave *non*-statutory, common-law claims within the coverage of the policy, including those for defamation. To that extent, a plain-text reading of the exclusion might not render the coverage promised earlier in the policy for "personal and advertising injuries" *wholly* illusory. But as the district court pointed out, such a reading would, as a practical matter, all but eliminate coverage for certain claims that are largely, if not exclusively, statutory in nature (intellectual property claims in particular) and that the policy by its express terms otherwise purports to cover. *Wynndalco*, 595 F.Supp.3d at 673–74. For that reason, we agree with the district court that this conflict between the competing policy provisions granting and excluding coverage gives rise to an ambiguity: the broad language of the catch-all exclusion purports to take away with one hand what the policy purports to give with the other in defining covered personal and advertising injuries.

*Wynndalco*, 70 F.4th at 997–98.

In its reasoning, the Seventh Circuit considered the heading of the Distribution of Material in Violation of Statutes Exclusion to be significant in interpreting of the breadth of the catch-all provision. The court rejected Citizens' argument that the exclusion applied only to statutory causes of action related to privacy, reasoning in part,

The title heading of the exclusion refers broadly to "Distribution of Material in Violation of Statutes," and following the citation of four such statutes, the catch-all provision purports to exclude from coverage a "personal or advertising injury" arising out of an act or omission that is alleged to violate "[*a*]*ny* other laws, statutes, ordinances, or regulations that address, prohibit or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (Emphasis ours.) No mention, and indeed no hint, of "privacy" appears anywhere in this language.

*Id*. at 998.

10

Having found ambiguity, the Seventh Circuit turned to the question of whether resort to textual canons, in particular, *ejusdem generis*, would result in a narrower reading of the catch-all provision that would nonetheless encompass BIPA. *Id*. at 999. "*Ejusdem generis* is a textual canon that seeks to clarify a broad or general term by looking to the specific items preceding that term for clues as to how that term should be construed." *Id*. "Where general words follow specific words . . . , the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. (citation omitted). Citizens took the position that the four statutes singled out by the exclusion regulate privacy in some way, and therefore the catch-all provision should be construed to encompass only statutes that likewise regulate privacy. *Id*. at 1000.

The Seventh Circuit began by looking to the Illinois Supreme Court's decision in *Krishna*. It succinctly described the analysis in *Krishna* as follows:

> We distill *Krishna*'s analysis down to this rationale: Where a violation-of-statutes exclusion has a title or heading that points to a particular category of statutes, where the statutes expressly identified in the exclusion fall within that very same category, and where there is some doubt about the reach of a broad catch-all provision immediately following the expressly-identified statutes, it is an appropriate application of *ejusdem generis* to construe the more general language of the catch-all provision as encompassing only that same category of statutes. Unfortunately, this rationale does not resolve the ambiguity presented by the violation-of-statutes exclusion in the Citizens policy.

*Wynndalco*, 70 F.4th at 1001.

The Seventh Circuit identified three material differences between the exclusions. First, the Seventh Circuit distinguished the headings: "in the Citizens policy, there is no language in the heading of the exclusion suggesting that only a certain category of statutes is implicated by the exclusion: the heading refers broadly to 'Distribution of Material in Violation of Statutes,' period, with no additional words suggesting that the exclusion is limited to statutes regulating

methods of communication, privacy, or any other particular subject matter." *Id*. at 1002. The court recognized that "terms used only in a heading cannot be invoked as a basis for *expanding* the scope of an exclusion" but they nonetheless "are permissible indicators of the meaning of the text that follows them." *Id.* at 1002 n. 10 (emphasis added) (citations omitted).

Second, the Seventh Circuit found that "although the exclusion, as in *Krishna*, expressly identifies the TCPA and the CAN-SPAM Act as laws that are implicated by the exclusion, the Citizens exclusion also references the FCRA and FACTA as statutes that are implicated, and in contrast to the first two statutes, those additional statutes do not regulate methods of communication: the FCRA regulates the reporting of credit information, and FACTA, an amendment to FCRA, deals with the accuracy of consumers' credit-related records." *Id*.

Third, the Seventh Circuit found that the language of the catch-all provision was broader "as it includes not only the sending, transmitting, communicating or distribution of material or information, but also the printing, dissemination, disposal, collecting, and recording of material or information." *Id*. For these three reasons, it was "not possible here as it was in *Krishna* to limit the exclusion to statutes regulating methods of communication." *Id*.

The Seventh Circuit then turned back to Citizens' argument that the "harmonizing factor among the statutes" in the exclusion is that they all address privacy. *Id*. at 1002. The court noted that "[r]eading the exclusion to apply solely to injuries resulting from violations of statutes that protect privacy interests avoids the problem of the exclusion swallowing the policy's coverage provisions for 'personal and advertising injuries.'" *Id*. at 1002–03. It noted that "only by referencing privacy at a high level of generality can one find a common thread among these statutes—one that would encompass privacy in multiple forms (seclusion in some cases and secrecy in others) and addressing distinct interests." *Id*. at 1003. However, *ejusdem generis* could

12

not "resolve the ambiguity presented by the exclusion" because as "noted earlier, there is nothing in the language of the exclusion—be it in the title or in any of the provisions that follow—which points to privacy as the focus of the exclusion." *Id*. The court reiterated, "In this respect, the exclusion here stands in marked contrast to the one at issue in *Krishna*, where the wording of the exclusion's heading indicated that it was statutes regulating methods of communication that were implicated by the exclusion and the two statutes specifically named by the title fell neatly into that very category of laws. There are no such textual clues to guide the reader to the privacy gloss for which Citizens advocates here." *Id*. The court found that the textual canon *noscitur a sociis* failed to resolve the ambiguity for the same reasons. *Id*.

Ultimately, the court was left with "no choice other than to conclude . . . that the catch-all provision" was "intractably ambiguous" and construe the ambiguity against Citizens in favor of the insured. *Id*. at 1004.

## *Visual Pak*

The Illinois Appellate Court in *Visual Pak* considered an exclusion identical to the one at issue in this case and held that it encompassed BIPA claims. The exclusion in *Visual Pak* stated in full:

2. Exclusions. This insurance does not apply to:
***
p. Recording And Distribution Of Material Or Information In Violation Of Law

Personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits *the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

*Visual Pak*, 2023 IL App (1st) 221160, ¶ 52 (emphasis added by the court).

The court began with the same initial conclusion as the Seventh Circuit: "[I]f we merely isolated this catchall language, it is simply impossible to deny that it describes BIPA. BIPA regulates the collection, dissemination, and disposal of one's biometric identifiers and information." *Id.* ¶ 55. The court then considered *Krishna* and, "following the lead" of the Illinois Supreme Court, invoked the *ejusdem generis* canon. *Id.* ¶ 57.

The Illinois Appellate Court, like the Illinois Supreme Court, began with the exclusion's title. The Illinois Appellate Court found that the title "Recording and Distribution of Material Or Information in Violation of Law," "[u]nlike the title in [*Krishna*], . . . is not limited to modes of communication" due to the addition of the word "recording." *Id.* ¶ 60. The Illinois Appellate Court considered various dictionary definitions of the word "recording":

> "Recording" is the gerund of the verb "record," which has many meanings but which, relevant here, the dictionaries define as "to cause (sound, visual images, data, etc.) to be registered on something (such as a disc or magnetic tape) in reproducible form." Another defines it as "to put or set down in writing or some other permanent form." Another: "to set down in writing or the like, as for the purpose of preserving evidence." Finally: "to keep information for the future, by writing it down or storing it on a computer," or "to store sounds or moving pictures using electronic equipment so that they can be heard or seen later." Indeed, even the noun form of "record," when used in this context, means "[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form."

*Id.* at ¶ 61 (citations omitted).

14

Next, the Illinois Appellate Court, like the Seventh Circuit in *Wynndalco*, noted that the listed statutes included TCPA and CAN-SPAM Act—as in *Krishna*—but also included the FCRA and FACTA. *Id*. ¶ 62. The Illinois Appellate Court agreed with the Seventh Circuit's finding that "[p]lainly, it is not possible here as it was in [*Krishna*] to limit the exclusion to statutes regulating methods of communication." *Id*. ¶ 64 (quoting *Wynndalco*, 70 F.4th at 1002). The Illinois Appellate Court further agreed with the Seventh Circuit that "the four statutes listed in our exclusion 'encompass two distinct types of privacy: seclusion and secrecy.' . . . The TCPA and CAN-SPAM Act address seclusion, 'the right to be left alone' . . . , while the FCRA and FACTA concern secrecy, 'the right to maintain the confidentiality of one's personal information.'" *Id*. at ¶ 68 (internal citations omitted) (citing *Wynndalco*, 70 F.4th at 1003). It then distinguished the exclusion before it from the one at issue in *Wynndalco*, based on the title:

> [T]he Seventh Circuit found nothing in the title of the exclusion hinting at a theme of privacy. *Wynndalco*, 70 F.4th at 1003. But this is the one difference that exists between the exclusion the Seventh Circuit considered and the one before us. While everything else in the exclusion is all but identical—with only the most inconsequential differences—the title of the exclusion in the Seventh Circuit's *Wynndalco* decision was "Distribution of Material in Violation of Statutes." *Id.* at 993. In contrast, the title of the exclusion before us is "*Recording* And Distribution Of Material *Or Information* In Violation Of Law." (Emphasis added.)
>
> That is no small difference. We might agree with the Seventh Circuit that the phrase "distribution of material" does not scream "privacy." But the same cannot be said of our title. The "[r]ecording *** of *** information in violation of law" certainly brings to mind the secrecy prong of the privacy interest—the notion of illegally taking and keeping a record of one's information. Indeed, it is hard to imagine what else it *could* mean; in what other context would it be illegal to keep a record of someone's information, if it were not personal, confidential information?

*Visual Pak*, 2023 IL App (1st) 221160 at ¶¶ 71–72 (emphasis original).

Next, the Illinois Appellate Court found that the language of the catch-all, taken together with the title's reference to "recording . . . of . . . information," admits of a privacy gloss:

> [T]he catchall references the violation of any statute, ordinance, or regulation, besides the four statutes specified, that governs the "printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Some of those words only make sense in the context of the secrecy element of privacy—disposal, collecting, and recording of information. The others are entirely consistent with privacy, though not limited to privacy. But taken together with the title's reference to "recording *** of *** information," and with the four statutes that address personal privacy in their different ways, we do not find it unreasonable at all to read into this exclusion the gloss of statutes that protect personal privacy.

*Id*. at ¶ 73.[3]

Consequently, the court found that under either the plain-reading of the catch-all provision or by applying the doctrine of *ejusdem generis* to limit the scope of the catch-all to the violation of statutes or other laws that protect personal privacy, violations of BIPA are included within the catch-all provision. In either event, the exclusion applied, and the insurer owed no duty to defend. *Id*. ¶ 78.[4]

## The Recording and Distribution Exclusion in the Citizens' Policies

The Court finds that the Recording and Distribution Exclusion at issue here is materially distinguishable from the exclusion at issue in *Wynndalco* and that *Visual Pak* best represents how the Illinois Supreme Court would decide whether the Recording and Distribution Exclusion includes violations of BIPA. The Court does not base its conclusion on any disagreements raised by the *Visual Pak* court with *Wynndalco*'s application of Illinois law. Rather, the Court's interpretation of the Recording and Distribution Exclusion that is at issue here is consistent with the reasoning and holding of the *Wynndalco* opinion.

---

[3] The court also noted that the catch-all provision is broader than that in *Krishna* due to the addition of "disposal, collecting, [and] recording." *Id*. at ¶ 54.

[4] The Court does not agree with Mullins's position that *Visual Pak* deviated from the Illinois Supreme Court's reasoning in *Krishna*. The Illinois Appellate Court in *Visual Pak* considered the methodology used in *Krishna* and distinguished the Recording and Distribution Exclusion from the exclusion at issue in *Krishna* for the reasons set forth above.

First, both *Wynndalco* and *Visual Pak* agree that a plain-language reading of the catch-all provision includes claims for violation of BIPA. *See Wynndalco*, 70 F.4th at 997 ("[A] literal, plain-text reading of the catch-all provision would include BIPA violations."); *Visual Pak*, 2023 IL App (1st) 221160, ¶ 55 ("[I]f we merely isolated this catchall language, it is simply impossible to deny that it describes BIPA. BIPA regulates the collection, dissemination, and disposal of one's biometric identifiers and information.").

Next, in finding the Distribution of Material in Violation of Statutes exclusion before it to be ambiguous, the Seventh Circuit reasoned in part that no "mention" or "hint" of "privacy" appears anywhere in the title. *Wynndalco*, 70 F.4th at 998. But the title of the exclusion in this case is different, stating, "*Recording And* Distribution Of Material *Or Information* In Violation Of Law Exclusion." (Emphasis added.) The Illinois Appellate Court in *Visual Pak* found this very difference to be material: "That is no small difference. We might agree with the Seventh Circuit that the phrase 'distribution of material' does not scream 'privacy.' But the same cannot be said of our title. The '[r]ecording *** of *** information in violation of law' certainly brings to mind the secrecy prong of the privacy interest—the notion of illegally taking and keeping a record of one's information. Indeed, it is hard to imagine what else it *could* mean; in what other context would it be illegal to keep a record of someone's information, if it were not personal, confidential information?" *Visual Pak*, 2023 IL App (1st) 221160 at ¶ 72 (emphasis original).

By including language that "scream[s]" privacy in the title, *id*., the plain-text reading of the Recording and Distribution Exclusion is limited to violations of statutes that protect privacy interests and avoids the ambiguity issue faced by the Seventh Circuit in *Wynndalco*. The Seventh Circuit's reasoning supports this conclusion:

> If one were to put that [privacy] gloss on the exclusion, one could readily read the catch-all provision as reaching injuries arising out of a violation of BIPA, which

protects the secrecy of one's biometric information by regulating, among other things, the collection, recording and dissemination of such information. But other injuries, like those stemming from slander and libel, copyright infringement, and trademark and trade dress infringement would remain untouched by the exclusion and thus within the scope of liability coverage, on this understanding of the exclusion. Reading the exclusion to apply solely to injuries resulting from violations of statutes that protect privacy interests thus avoids the problem of the exclusion swallowing the policy's coverage provisions for 'personal and advertising injuries.'

*Wynndalco*, 70 F.4th at 1002–03.[5] In this event, the Recording and Distribution Exclusion unambiguously includes BIPA claims, and the Court need not resort to *ejusdem generis* or other textual canons.

The Court nonetheless reaches the same result even if it were to assume that a plain-text reading of the catch-all provision, in consideration with the title, is ambiguous because it would "swallow a substantial portion of the coverage that the policy otherwise explicitly purports to provide." *Wynndalco*, 70 F.4th at 999. In that scenario, the Court then follows the lead of *Wynndalco* to apply the textual canon *ejusdem generis* to determine whether the catch-all provision could be narrowed in some way. In *Wynndalco*, the Seventh Circuit "distill[ed] *Krishna*'s analysis" but found that the rationale did not resolve the ambiguity in the exclusion before it. *Wynndalco*, 70 F.4th at 1001. The same cannot be said here, where the exclusion "has a title or heading that points to a particular category of statutes," *id*.: *i.e.*, personal privacy.

Further, "the statutes expressly identified in the exclusion fall within that very same category," *id*., as noted in both *Wynndalco* and *Visual Pak*. *See Visual Pak*, 2023 IL App (1st) 221160, ¶ 68 ("[T]he four statutes listed in our exclusion 'encompass two distinct types of privacy: seclusion and secrecy.' . . . The TCPA and CAN-SPAM Act address seclusion, 'the

---

[5] Based on the Seventh Circuit's reasoning, Mullins's argument that *Visual Pak* erred in failing to consider that the "arising directly or indirectly out of" language of the exclusion would also preclude any common law actions arising out of the same act that gave rise to a violation of the statute does not move the needle.

right to be left alone' . . . , while the FCRA and FACTA concern secrecy, 'the right to maintain the confidentiality of one's personal information.'); *Wynndalco*, 70 F.4th at 1003 (same). Granted, the Seventh Circuit found that a privacy theme "would not be obvious to the type of layperson or business purchasing this policy, given the different ways in which the statutes operate to protect the two distinct categories of privacy interests." *Wynndalco*, 70 F.4th at 1003. But the layperson purchasing the policy at issue in *Wynndalco* would be without the benefit of the additional language in the title here, "[r]ecording . . . of . . . information in violation of law," which the Illinois Appellate Court found "scream[s]" privacy. *Visual Pak*, 2023 IL App (1st) 221160 at ¶ 72. This is the sort of language that "jumps off the page . . . as a common characteristic uniting the four statutes listed in the exclusion." *Wynndalco*, 70 F.4th at 1003 (citation omitted). These words are the "textual clues" missing in the exclusion before the Seventh Circuit "to guide the reader to [a] privacy gloss." *Id*. The Recording and Distribution Exclusion is therefore more akin in nature (if not theme) to the exclusion at issue in *Krishna*, "where the wording of the exclusion's heading indicated that it was statutes regulating methods of communication that were implicated by the exclusion and the two statutes specifically named by the title fell neatly into that very category of laws." *Id*. Here, the wording of the exclusion's heading indicates that it is statutes regulating violations of privacy that are implicated by the exclusion and the four statutes specifically named fall neatly into that very category of laws.

So, returning to the *Krishna* rationale as enunciated in *Wynndalco*, where, as here, "there is some doubt about the reach of a broad catch-all provision immediately following the expressly-identified statutes, it is an appropriate application of *ejusdem generis* to construe the more general language of the catch-all provision as encompassing only that same category of statutes." *Wynndalco*, 70 F.4th at 1001. Consequently, even in the scenario where the catch-all

provision is ambiguous, the application of *ejusdem generis* permits a narrowing construction of the catch-all provision to encompass statutes regulating violations of privacy, which includes BIPA.

In short, under either the plain-reading of the catch-all provision or by applying the doctrine of *ejusdem generis* to limit the scope of the catch-all to the violation of statutes or other laws that protect personal privacy, violations of BIPA are included within the catch-all provision. In either scenario, the exclusion applies, and Citizens owes no duty to defend or indemnify the *Galan* Lawsuit. Summary judgment is therefore granted in Citizens' favor.

Finally, the Court addresses Mullins's revived argument that *Krishna* is controlling. The Court finds that the Recording and Distribution Exclusion is materially distinguishable from the exclusion at issue in *Krishna*. In accordance with the findings in *Wynndalco* and *Visual Pak*, (1) the title contains no language identifying methods of communication, unlike the title in *Krishna*; (2) in addition to the two statutes listed in *Krishna* (the TCPA and CAN-SPAM Act), the Recording and Distribution Exclusion lists the FCRA and FACTA, which cannot be grouped into statutes regulating methods of communication; and (3) the catch-all provision is broader than in *Krishna* because it adds the verbs "disposal, collecting, [and] recording." Consequently, unlike the violation-of-law exclusion at issue in *Krishna*, the Recording and Distribution Exclusion here cannot be limited to statutes regulating methods of communication and *Krishna* is not directly controlling.

### b. Access Or Disclosure Of Confidential Or Personal Information Exclusion

Even if the Recording and Distribution Exclusion does not apply, the Court reconsiders its prior ruling on the Access Or Disclosure Of Confidential Or Personal Information Exclusion and finds that it applies to preclude coverage for the *Galan* Lawsuit. The Access Or Disclosure

Of Confidential Or Personal Information Exclusion excludes from coverage, "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." Citizens argued on summary judgment that the allegations in the *Galan* Lawsuit alleging wrongful dissemination of the putative class members' private biometric information, such as fingerprints and handprints, fall within the scope of the exclusion.

The Court noted in its July 31 Opinion that multiple courts within this district have found that similar exclusions bar coverage for underlying BIPA claims. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2023 WL 319235, at *4 (N.D. Ill. Jan. 19, 2023); *Cheese Merchs. of Am.*, 2022 WL 4483886, at *9; *Am. Fam. Mut., Ins. Co., S.I. v. Carnagio Enters., Inc.*, No. 20 C 3665, 2022 WL 952533, at *9 (N.D. Ill. Mar. 30, 2022). The Court noted, however, that several other courts in this district that have considered this same issue found the other way—in favor of the insured. *See Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 855 (N.D. Ill. 2022); *Citizens Ins. Co. of Am. v. Highland Baking Co., Inc.*, No. 20-CV-04997, 2022 WL 1210709, at *1 (N.D. Ill. Mar. 29, 2022); *Am. Fam. Mut. Ins. Co. v. Caremel, Inc.,* No. 20 C 637, 2022 WL 79868, at *3 (N.D. Ill. Jan. 7, 2022). This Court found the reasoning of the latter decisions to be most persuasive in light of the Seventh Circuit's opinion in *Wynndalco*, which discussed the same canons of interpretation invoked by the parties in this case, albeit in respect to a different exclusion—the Distribution of Materials in Violation of Law Exclusion addressed above. *Wynndalco*, 70 F.4th at 1003-04. The *Wynndalco* opinion did not address any Access Or Disclosure Of Confidential Or Personal Information Exclusion and therefore is not controlling in this respect.

21

Although the *Visual Pak* opinion also did not address the Access Or Disclosure Of Confidential Or Personal Information Exclusion, the Court is persuaded by the reasoning set forth therein disagreeing with the manner in which the Seventh Circuit applied the principles of Illinois contract law.[6] The Court accordingly reconsiders its analysis of the Access Or Disclosure Of Confidential Or Personal Information Exclusion with the principles of Illinois contract law set forth by the Illinois Appellate Court in *Visual Pak* in mind.

The Court begins with the text of the exclusion, the first clause of which broadly carves out of the coverage grant "'personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information. . . ." The word "any" has a broad meaning. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976))). "Personal information" is not defined in the Policies, but it takes no stretch of the imagination to find that it would include information typically kept private. *See Personal*, Oxford English Dictionary, https://www.oed.com/view/Entry/141482 (last visited February 26, 2024) ("Of, relating to, concerning, or affecting a person as a private individual (rather than as a member of a group or the public, or in a public or professional capacity); individual, private; one's own."); *Information*, Oxford English Dictionary, https://www.oed.com/view/Entry/95568 (last visited February 26, 2024) ("Knowledge communicated concerning some particular fact, subject, or event."). Fingerprints and handprints are unique to a specific person, which is "why companies want [them] and use [them]." *Cheese Merchs. of Am.*, 2022 WL 4483886, at *6; *cf. Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), *as amended on denial of reh'g and*

---

[6] This Court reiterates that, in its analysis of the Recording and Distribution Exclusion, it does not rely on any disagreement raised by the Illinois Appellate Court with respect to the Seventh Circuit's application of Illinois law.

*reh'g en banc* (June 30, 2020) (fingerprints are private information). A literal, plain-text reading of the first clause would include fingerprint and handprint scans. This conclusion has not changed from the Court's July 31 Opinion.

But the first clause does not stand alone, and the Court must consider the language of the exclusion—and indeed, the policy—as a whole. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 313 (Ill. 2006) ("Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."). The remainder of the exclusion begins with "including," followed by a list of examples: " . . . including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." Fingerprints, handprints, or other biometric information are not expressly listed. Citizens argue that the list of examples begins with the illustrative and non-exhaustive term "including." *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation."). And the list ends with "any other type of nonpublic information," which courts have noted is so broad "it is hard to think of a wider umbrella." *Cheese Merchs. of Am.*, 2022 WL 4483886, at *8.

Mullins argued on summary judgment that the listed examples are types of sensitive information traditionally kept private for financial or proprietary reasons (*i.e.*, patents, trade secrets, processing methods, consumer lists, financial information, and credit card information), or for personal reasons (*i.e.*, health information), and that fingerprints are neither intellectual property nor financial information, and would "stretch the definition of health information to include a physical characteristic that has nothing to do with the state of health of the individual." *Caremel*, 2022 WL 79868, at *3. Mullins invoked *ejusdem generis*, "a textual canon that seeks to

23

clarify a broad or general term by looking to the specific items preceding that term for clues as to how that term should be construed," *Wynndalco*, 70 F.4th at 999, and the related textual canon of *noscitur a sociis*. However, this Court noted in its July 31 Opinion that those textual canons "come[] into play only if there is some doubt about the meaning of the terms used in a contract or statute[,]" *id.*, and set that argument aside to determine whether the exclusion was ambiguous in the first instance.

This Court then found that "[a]s with the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, the breadth of Citizens' interpretation of the Access Or Disclosure Of Confidential Or Personal Information Exclusion threatens to 'swallow a substantial portion of the coverage that the policy otherwise explicitly purports to provide in defining a covered 'personal or advertising injury[.]'" (July 31 Opinion 18 (quoting *Wynndalco*, 70 F.4th at 999).) The Court further found that "[u]nder Citizens' interpretation, the Citizens Policy gives with one hand coverage for injury arising out of a 'publication . . . of material that violates a person's right of privacy' but would take away with the other hand injury 'arising out of any access to or disclosure of any person's . . . confidential or personal information'—full stop." *Id.*

In *Visual Pak*, the Illinois Appellate Court raised thoughtful concerns with this rationale vis-à-vis the violation-of-law exclusions:

> We cannot agree with the Seventh Circuit's analysis. We do not find it to be an accurate reflection of Illinois law. We find two fundamental flaws in the court's reasoning. First, under Illinois law, the fact that an exclusion has a "broad sweep" . . . is not, in and of itself, a reason to deem the coverage "illusory" . . . . It is only when the exclusion has the effect of "swallowing" . . . the coverage *entirely* that the exclusion can be deemed illusory—and this is plainly not the case here.

*Visual Pak*, 2023 IL App (1st) 221160, ¶ 84 (emphasis original). The Illinois Appellate Court considered the Illinois decisions that the Seventh Circuit relied upon and found they were either "garden-variety examples of conflicts in language that generate an ambiguity" or,

> stand for the common-sense proposition that an insurer's interpretation of an exclusion will not be adopted if that interpretation would altogether eliminate or "swallow" the coverage on which the insured relies. An exclusion that is interpreted to deny coverage for not only intentional acts but also accidental and negligent acts results in a policy that covers *no* acts. Insureds may choose to limit their coverage and pay reduced premiums accordingly, but nobody would buy insurance that provides no coverage whatsoever. But as we will explain below, we do not face that situation here; the exclusion at issue here does not come close to wholly erasing the insured's coverage.

*Id*. ¶¶ 88–89 (emphasis original).

The court went on to note the "general observation" that courts "must be extremely careful when talking about 'conflicts' in policy language because every exclusion, to some degree, conflicts with the coverage provision. That is the very reason for the exclusion; it is an exception to the general rule of coverage. . . . But the mere fact that an exception conflicts with the coverage provision does not, in and of itself, make it ambiguous—if it did, no exclusion would ever be upheld." *Id*. ¶ 93.

The court expanded upon the difference between conflict and ambiguity:

> If one were to say, "I love all vegetables, except for asparagus," the dislike of asparagus would conflict with the love of all vegetables. But we would have no trouble understanding what was said. And if the exception were significantly broader—"I love all vegetables except green ones"—we could still make sense of the statement. Those are conflicts, but they are not ambiguous in the least.

> On the other hand, if one said, "I love all vegetables except those that are grown," we would scratch our heads, as the exception does not just conflict with the rule but swallows it whole. It is tantamount to saying, "I love all vegetables, except I do not love any vegetables."

*Id*. ¶¶ 94–95.

25

Under Illinois law, "[a] policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Id*. ¶ 108 (quoting *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 841 N.E.2d 78, 86 (2005), *aff'd*, 860 N.E.2d 280 (2006)). If courts were to "stray from that doctrine, we would have to start asking such unanswerable questions as, 'How broad an exclusion is too broad?' or 'What percentage of the coverage can be excluded (51 percent? 80 percent?) before the coverage is deemed illusory?'" *Id*. ¶ 108. To do so would "drag us into the dangerous zone of interfering with freedom of contract, for sometimes the insured knowingly obtains limited coverage, and the premiums are set accordingly." *Id*. (listing cases).

With these principles in mind, the Court considers whether the Access Or Disclosure Of Confidential Or Personal Information Exclusion eviscerates all, or even nearly all, coverage for a "personal and advertising injury." The subpart (e) on which Mullins relies for coverage defines "personal and advertising injury" to include, "injury, including consequential 'bodily injury', arising out of . . . Oral or written publication, in any manner, of material that violates a person's right of privacy."

As noted above, the "right of privacy" is commonly understood to encompass more than just preventing access to or disclosure of confidential or personal information. The Seventh Circuit admonishes district courts to take care when interpreting the meaning of "privacy" in the context of an insurance policy:

> 'Privacy' is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. . . A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted

26

> pregnancy, has both informational (secrecy) and locational (seclusion) components,
> with an overlay of substance (the objection to governmental regulation).

*Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 941 (7th Cir. 2004)

(citations omitted). The court, without having had any Illinois cases on point as guidance at that

time, found that the structure of the policy, and specifically the use of the term "publication,"

"strongly implies that coverage is limited to secrecy interests." *Id*. The Illinois Supreme Court

subsequently disagreed, however, holding that because the "right of privacy" "connotes both an

interest in seclusion and an interest in the secrecy of personal information," the policy language

"'material that violates a person's right of privacy' can reasonably be understood to refer to

material that violates a person's seclusion[,]" including a TCPA fax-ad claim for sending

unsolicited fax advertisements. *Swiderski Elecs.*, 860 N.E.2d at 317. Although this Court in its

July 31 Opinion found that the Seventh Circuit's underlying point that the "publication" of

information—a requisite to coverage—is more often relevant to a secrecy interest than a

seclusion interest, with the benefit of the principles set forth in *Visual Pak*, "more often" is not

enough to base a finding that the Access Or Disclosure Of Confidential Or Personal Information

Exclusion fully, or even nearly, eviscerates the coverage grant.

Further, this Court noted in its July 31 Opinion that some district courts point out that

even a broad interpretation of the Access Or Disclosure Of Confidential Or Personal Information

Exclusion would not necessarily preclude coverage for claims brought under the tort of false

light or the appropriation of one's name or identity for personal gain. (July 31 Opinion 19 (citing

*Cheese Merchs. of Am.*, 2022 WL 4483886, at *8).) And this Court noted that the exclusion

would not bar coverage for the TCPA fax-ad claims at issue in *Swiderski Electronics*, (July 31

Opinion 19–20)—although claims for violations of the TCPA are otherwise expressly excluded

by the Policy's Recording And Distribution Of Material Or Information In Violation Of Law

Exclusion. Finally, subsection (e) aside, the Court could not say that the Access Or Disclosure Of Confidential Or Personal Information Exclusion eliminates a vast majority of the other coverage under the "personal and advertising injury" coverage grant. For example, the exclusion of "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information" would not preclude coverage for subparts (a) through (c) of the coverage—liability for false arrest, false imprisonment, malicious prosecution, wrongful eviction, or trespass. (Citizens' SOF ¶ 3, ECF No. 45; *see also, e.g.*, Ex. A thereto at ECF p. 175 of 1125.) None of those involve the access to or disclosure of confidential or personal information. Accordingly, the Court finds that the Access Or Disclosure Of Confidential Or Personal Information Exclusion does not wholly eviscerate subsection (e) of the personal and advertising injury coverage grant, or the personal and advertising injury coverage grant as a whole, and so is not ambiguous. Because the exclusion is not ambiguous, the Court need not turn to the textual canons of *ejusdem generis* and *noscitur a sociis*.

For these reasons, the *Galan* Lawsuit falls within the scope of the Policy's Access Or Disclosure Of Confidential Or Personal Information Exclusion and Citizens has no duty to defend or indemnify.

## B. Notice

Having found that two exclusions bar coverage for the *Galan* Lawsuit, Citizens' arguments respecting notice are moot and the Court therefore vacates its rulings respecting notice in its July 31 Opinion.

## II. Mullins's Motion for Partial Relief from Judgment

Mullins moves the Court to vacate its ruling granting summary judgment and dismissing Mullins's breach of contract counterclaim. All of the arguments that Mullins makes in its Motion

were or could have been raised in its summary judgment briefing. When a party makes arguments that they made or could have made the first time around, they clog the Court's docket and waste the Court's time. A court "ought not to revisit an earlier ruling in a case absent compelling reasons, such as manifest error or change in the law, that warrants reexamination." *Tyrer v. City of South Beloit*, 516 F.3d 659, 663 (7th Cir. 2008) (citing *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007); *Moriarty v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005)). Accordingly, reconsideration is not warranted and Mullins's Motion for Partial Relief from Judgment is denied.

## Conclusion

For the reasons discussed, Mullins's Motion for Partial Relief from Judgment [75] is denied and Citizens' Motion for Reconsideration [82] is granted. Because Citizens has no duty to defend or indemnify the *Galan* Lawsuit, summary judgment is granted in Citizens' favor. The pretrial conference previously set for February 27, 2024 at 1:00 p.m. is stricken. The bench trial currently set for March 7, 2024 is stricken. The pending motions *in limine* [77] [78] [79] are denied as moot.

**SO ORDERED.**                                   **ENTERED: February 27, 2023**

**HON. JORGE ALONSO**
**United States District Judge**